UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DURWIN L. ABBOTT (#316843)

VERSUS                                          CIVIL ACTION

ANGELO A. TARVER, ET AL                         NUMBER 13-94-SDD-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, April 17, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DURWIN L. ABBOTT (#316843)

VERSUS                                    CIVIL ACTION

ANGELO A. TARVER, ET AL                   NUMBER 13-94-SDD-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court are the Plaintiff's Motion for Summary Judgment and the Defendants' Motion for Summary Judgment. Record document numbers 24 and 25, respectively. The motions are opposed.[1]

Pro se plaintiff, while an inmate confined at Dixon Correctional Institute ("DCI"), Jackson, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Angelo A. Tarver, Louisiana Department of Public Safety and Corrections Secretary James M. LeBlanc, Warden Steve Rader and Warden Bruce Coston. Plaintiff alleged that he was required to perform work in violation of his medical duty status and in retaliation for filing an Administrative Remedy Procedure ("ARP") against Dr. Tarver.

Plaintiff moved for summary judgment relying on his declaration, answers to admissions, a copy of Department Regulation B-06-001, a copy of the plaintiff's medical duty status dated April

---

[1] Record document numbers 26 and 27, respectively.

23, 2013, a copy of Hunt Correctional Center Institutional Policy #400-A07, a copy of Dixon Correctional Institute Policy Number 4E-002 dated March 3, 2011, a copy of a letter from the plaintiff to Cherryl Taylor dated May 5, 2010, a copy of ARP DCI-2010-342 and a copy of DCI-Unit Specific For Offender Posted Policy #031.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Terry Grady, R.N., Dr. A. Anthony Tarver, and Rhonda Weldon, copies of the plaintiff's medical records, a copy of a copy of Dixon Correctional Institute Policy and Procedure Number 4E-002, and the results of ARP DCI-2010-752 and DCI-2010-295.

## I. Factual Allegations

Plaintiff alleged that on April 20, 2010, he was required to perform work in violation of his medical duty status in retaliation for filing an administrative grievance. Specifically, the plaintiff alleged that on April 4, 2010, he filed ARP DCI-2010-295 against Dr. Tarver. Plaintiff alleged that on April 20, 2010, Warden Coston ordered him to work on Crew 13, which is a cell block work crew that works in the agricultural fields, even though he had a light duty medical duty status. Plaintiff alleged that he went to sick call complaining about the work assignment and was examined by nurse Weber. Plaintiff alleged that when he asked nurse Weber if Dr. Tarver had reviewed his medical chart, she replied that Dr. Tarver was busy and then she became hostile and told the plaintiff

he was going to work on Crew 13.

Plaintiff alleged that he experienced pain in his leg and right wrist. Plaintiff alleged that he sought medical treatment during sick call on April 21 and April 22 but was not removed from Crew 13 by Dr. Tarver. Plaintiff alleged that on April 23 he sought medical treatment during sick call, complaining that he was out of medication and was experiencing pain in his right arm.

Plaintiff alleged that on May 20, 2010, he sought medical treatment at sick call, complaining that he needed artificial tear drops due to irritation, dryness and itching caused by the sun light and dust particles which aggravated is glaucoma. Plaintiff alleged that he also sought protective eye wear.

Plaintiff alleged that Dr. Tarver denied him medical treatment in retaliation for filing ARP DCI 2010-295. Plaintiff alleged that Warden Coston is responsible for the cell block and he made the decision to send the plaintiff to the agricultural fields to work. Plaintiff alleged that Warden Rader is known for harassment and retaliating against inmates who file administrative grievances. Plaintiff alleged that Secretary LeBlanc in legally responsible for the overall operation of the Department of Corrections and each prison facility under its jurisdiction.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue

3

as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(c).  Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment.  *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 660 (5th Cir. 2012).  The court need only consider cited materials, but it may consider other materials in the record.  Rule 56(c)(1)(3).

### B. Failure To Exhaust Available Administrative Remedies

Plaintiff alleged that Warden Rader is known for harassment and retaliating against inmates who file administrative grievances. Plaintiff alleged that Secretary LeBlanc in legally responsible for the overall operation of the Department of Corrections and each prison facility under its jurisdiction.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is

precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules. *Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act (PLRA) does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218,

5

127 S.Ct. 910, 922-23 (2007).   Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).   A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.*

Defendants argued that the plaintiff failed to exhaust available administrative remedies regarding his claims against Warden Rader and Secretary LeBlanc.  Plaintiff asserted in his complaint that he exhausted ARP DCI-2010-752 regarding the claims raised in the complaint.[2]   The summary judgment evidence showed that in ARP DCI-2010-752 the plaintiff complained that Dr. Tarver was deliberately indifferent to his serious medical needs, committed malpractice and retaliated against him for filing an administrative grievance against him.   Plaintiff also complained that Warden Coston ordered him to work on Crew 13 cell block line even though he had a light duty medical duty status.

As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a

---

[2] Record document number 1, Complaint, p. 3, § II. ¶ C.1.

6

particular official that he may be sued.  However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.

The summary judgment evidence showed that the plaintiff's ARP failed to provide prison administrators with a fair opportunity to address the plaintiff's harassment and retaliation claims against Warden Rader and his claim that Secretary LeBlanc is responsible for the actions of his subordinates.

Plaintiff failed to exhaust available administrative remedies regarding his claims against Secretary LeBlanc and Warden Rader as required by 42 U.S.C. § 1997e(a).

### C. Deliberate Indifference

Plaintiff alleged that Warden Coston was deliberately indifferent to his serious medical needs.  Specifically, the plaintiff alleged that Warden Coston made the decision to have him report to work in the agricultural fields even though the plaintiff had a medical duty status which restricted him to work on the compound.

Plaintiff further alleged that Dr. Tarver was deliberately indifferent to his serious medical needs.  Specifically, the plaintiff alleged that he was required to perform work which was restricted by his medical duty status.  Plaintiff alleged that Dr. Tarver refused to modify his medical duty status after the

7

plaintiff made repeated complaints that he could not perform work in the agricultural fields.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

The summary judgment evidence showed that duty statuses are assigned by staff physicians to ensure an offender does not engage in activities that are detrimental to his basic health and/or safety.[3] Duty statuses are the means by which the medical department communicates to security personnel the level of activity and work assignments an inmate is capable of safely performing.[4] Duty statuses are assigned and documented in the medical record by staff physicians through direct written or verbal orders during an encounter with an offender.[5] The encounters may be face to face,

---

[3] Record document number 25-4, Exhibit B, Policy and Procedure Number 4E-002, p. 9, § IV, ¶ A.

[4] *Id*. at ¶ B.

[5] *Id*. at ¶ F.

8

part of a chart review regarding consultant recommendations, or sick call review.[6]

"D/S" is the approved abbreviation for Duty Status.[7] "Compound" includes the entire DCI main prison grounds, including those grounds across Louisiana Hwy. 68 from the main compound area.[8] "Regular Duty Compound Squad" is used for offenders having certain illnesses, injuries, or physical defects requiring that they remain in close proximity to the infirmary.  These offenders are not assigned jobs off the compound.[9]

Plaintiff's medical records showed that on January 11, 2010, the plaintiff completed a Health Care Request Form complaining that he wanted to see a doctor about his duty status.[10]  Plaintiff's request was referred to a doctor.[11]

On January 21, 2010, the plaintiff was evaluated by Dr. Tarver regarding the request to modify his medical duty status.[12]

---

[6] *Id.*

[7] *Id.* at p. 10, ¶ J.1.

[8] *Id.* at ¶ J.12.

[9] *Id.* at ¶ K.3.

[10] Record document number 25-3, Exhibit A, p. 1.

[11] *Id.*

[12] *Id.* at 2.

Plaintiff's duty status was regular duty with restrictions.[13]   A notation was made in the plaintiff's medical chart that the plaintiff insisted that the changes made to his duty status were inappropriate and that he is unable to perform the new duties.[14] Plaintiff complained that the jobs he was reassigned to perform were making his condition worse and requested a change.[15]  Plaintiff requested the removal of a walking restriction and an increase in the weight restriction to 50 pounds due to right arm weakness.[16] The medical records showed that Dr. Tarver reviewed previous medical notes which indicated normal exams in the neuro clinic and negative x-ray studies, including recent CT scans of the head and face.[17]   Plaintiff's medical records showed that following the evaluation, Dr. Tarver changed the plaintiff's duty status to Regular Duty Compound, no prolonged walking, no lifting over 25 pounds, no sports and no weight lifting.[18]

Plaintiff's medical records showed that on April 20, 2010, the plaintiff completed a Health Care Request Form requesting to see a

---

[13] *Id.* at 3.

[14] *Id.* at 2.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 2, 4; record document number 25-6, Exhibit D, Terry Grady, R.N. affidavit, p. 2.

doctor about his duty status.[19]  Plaintiff complained that he was being told he could perform work in the agricultural fields but he suffered from glaucoma, high blood pressure and he should not be using his right hand because of nerve damage.[20]  Plaintiff requested an indoor duty status.[21]  Plaintiff's medical records showed that Dr. Tarver conducted a chart review and found that there was no contraindication regarding the plaintiff's right arm and that the duty status was appropriate as written.[22]

Plaintiff's medical records showed that on April 21, 2010, the plaintiff completed a Health Care Request Form requesting to see a doctor about his duty status.[23]  A notation was made in the plaintiff's chart that he made the same complaint the day before, and that Dr. Tarver had conducted a chart review and determined that the duty status was appropriate.[24]

Plaintiff's medical records showed that on April 22, 2010, the plaintiff completed a Health Care Request Form requesting to see a

---

[19] Record document number 25-3, p. 12.  The date at the bottom of the form is April 19, 2010.  This discrepancy is not material.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* at 13.

[24] *Id.*

11

doctor — not a nurse — for a duty status.[25]  A notation was made in the plaintiff's chart by medical personnel that on January 21, 2010, Dr. Tarver issued the duty status and on April 20, 2010 he conducted a chart review and determined that the duty status was appropriate.[26]

Plaintiff's medical records showed that on April 23, 2010, the plaintiff completed a Health Care Request Form complaining that he was out of medication and that he was experiencing pain in his right arm.[27]  Plaintiff was examined by a nurse who noted that the plaintiff had a good range of motion in right arm and hand and no swelling or deformities was noted.[28]  Plaintiff was issued a tube of analgesic balm for pain.[29]  The nurse also discussed the plaintiff's duty status with him and advised him that Dr. Tarver had determined that the medical duty status was appropriate.[30]

Plaintiff's medical records showed that on May 20, 2010, the plaintiff completed a Health Care Request Form complaining that he

---

[25] *Id.* at 14.

[26] *Id.*

[27] *Id.* at 15.

[28] *Id.*

[29] *Id.*

[30] *Id.*

was in need of protective eye wear and artificial tears eye drops.[31]
Plaintiff was provided protective eye wear and was prescribed
artificial tears.[32]   Plaintiff's medical duty status was also
modified to require safety glasses or protective eye wear.[33]

   Plaintiff's medical records showed that on June 7, 2010, the
plaintiff completed a Health Care Request Form complaining of right
arm pain and requesting to see a doctor.[34]   Plaintiff's medical
records showed that the plaintiff was examined by Dr. Tarver on
June 15, 2010.[35]   Plaintiff's medical records showed that the
plaintiff complained of right arm pain and numbness at times.[36]
Plaintiff complained that a follow up appointment had not been
scheduled in the neuro clinic.[37]   Dr. Tarver advised the plaintiff
that the neuro notes indicated that neither surgery nor a brace
were recommended and not follow up visit was ordered.[38]   Lab work

---

[31] *Id.* at 22.

[32] *Id.*

[33] *Id.* at 23.

[34] *Id.* at 24.

[35] *Id.* at 25.

[36] *Id.*

[37] *Id.*

[38] *Id.*

was ordered and a follow up appointment was scheduled.[39]

Plaintiff's medical records showed that the plaintiff completed a Health Request Form on July 27, 2010 complaining that he had been waiting four weeks to see a doctor about his medication.[40] Plaintiff voiced no other complaints.[41] Plaintiff was advised that an appointment had been scheduled.[42]

Plaintiff's medical records showed that on July 29, 2010, the plaintiff completed a Health Request Form complaining of constant sweating, lightheadedness, weakness, numb feet and hands and a boil on his left leg.[43] The nurse cleaned the boil and applied a band-aid and referred the plaintiff to the doctor for evaluation.[44]

Plaintiff's medical records showed that the plaintiff was examined by Dr. Prout on August 1, 2010.[45]

The summary judgment evidence showed that during the time period at issue, the plaintiff was issued a medical duty status Regular Duty Compound which included the entire DCI main prison

---

[39] *Id.*

[40] *Id.* at 27.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 28.

[44] *Id.*

[45] *Id.* at 29.

14

grounds, including agricultural field duty.[46]  There is no evidence in the record that Warden Coston violated the plaintiff's medical duty status and required him to perform work proscribed by his medical duty status.  Nor is there any evidence that Dr. Tarver was deliberately indifferent to the plaintiff's medical needs. Plaintiff's disagreement regarding which limitations should be included in his duty status do not rise to the level of a constitutional violation.

### D. Retaliation

Plaintiff alleged that Dr. Tarver denied him medical treatment in retaliation for filing an ARP against the doctor.

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions.  *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, a prisoner must establish four elements  (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or

---

[46] Record document number 25-7, Exhibit E, Dr. A. Anthony Tarver affidavit, p. 6.

her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

16

The purpose of allowing inmates to assert retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimis acts* that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*).

First, the plaintiff failed to demonstrate the violation of a constitutional right. As set forth above in the analysis of the claim against Dr. Tarver, there is no evidence in the record that Dr. Tarver denied the plaintiff medical treatment or was otherwise deliberately indifferent to the plaintiff's medical needs.

Second, the plaintiff failed to produce direct evidence of motivation nor did he allege a chronology of events from which retaliation may plausibly be inferred. There is no evidence in the

17

record that Dr. Tarver knew that the plaintiff filed an administrative grievance against him. The summary judgment evidence showed that ARP DCI-2010-295 was received in the Deputy Warden's Office on April 7, 2010 and was rejected on May 22, 2010.[47] Dr. Tarver denied any knowledge of the ARP filed against,[48] and there is no contrary evidence in the record.

<u>**RECOMMENDATION**</u>

It is the recommendation of the magistrate judge that the Plaintiff's Motion for Summary Judgment be denied, that the Defendants' Motion for Summary Judgment be granted, and this action be dismissed.

Baton Rouge, Louisiana, April 17, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[47] Record document number 25-8, pp. 1-8.

[48] Record document number 25-7, p. 5.

18